## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YALE-NEW HAVEN HOSPITAL
20 York Street
New Haven, CT 06510

and

BRIDGEPORT HOSPITAL
267 Grant Street
Bridgeport, CT 06610

                                    Plaintiffs,

v.

ALEX M. AZAR, as SECRETARY OF
THE UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
200 Independence Avenue, S.W.
Washington, D.C.  20201

                                    Defendant.

Civil Action No. 1:18-cv-1718

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY AND INJUNCTIVE RELIEF**

## NATURE OF ACTION

1.      This case concerns the proper calculation of the Medicare disproportionate share hospital ("DSH") payment.  Specifically, the issue is whether patients who are eligible for benefits under Part A of the Medicare Act but are enrolled in a Medicare Advantage plan under Part C of the Medicare Act are nonetheless "'entitled to benefits' under Part A," as that term is used in 42 U.S.C. § 1395ww(d)(5)(F)(vi).

2.      Under Section 1395ww(d)(5)(F)(vi), DSH payments are determined based on the sum of two fractions.  The first fraction, known as the "Medicaid fraction," is the number of inpatient days associated with patients eligible for Medicaid but not eligible for Medicare under

Part A over the hospital's total number of inpatient days.  The second fraction, known as the "Part A/SSI fraction," is the number of inpatient hospital days associated with patients entitled to benefits under Part A of the Medicare statute and also eligible for SSI over the number of inpatient hospital days associated with patients entitled to benefits under Part A.

3.       In *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014) ("*Allina I*"), the D.C. Circuit affirmed this Court's decision declaring invalid and vacating a procedurally invalid rule, adopted in 2004, which provided that the Part C days (the number of inpatient days associated with patients enrolled in Medicare Part C) should be included in the Medicare Part A/SSI fraction and excluded from the numerator of the Medicaid fraction. *Id.* at 1111.  Although four years have passed since the *Allina I* decision, the Secretary continues to apply the Part C days policy adopted in the now-vacated 2004 rule.

4.       In a separate action brought by a group of hospitals that were plaintiffs in *Allina I*, the Court of Appeals recently ruled that the Secretary's continued application after *Allina I* of the Part C days policy adopted in the 2004 rule was a procedurally invalid "change" because the Medicare Act required the Secretary to engage in notice and comment rulemaking.  *Allina Health Servs. v. Price*, 863 F.3d 937, 944 (D.C. Cir. 2017) ("*Allina II*").

5.       The continued application of the 2004 rule and the Part C policy adopted in that rule is not only procedurally invalid, as the D.C. Circuit has now twice ruled, but is substantively invalid as well. The Part C policy adopted in the 2004 rule change fails any test of reasoned decision-making and is inconsistent with congressional intent.  The plaintiff hospitals, therefore, seek an order declaring invalid and enjoining the Secretary from applying any policy treating Part C days as Part A days for purposes of calculating Medicare DSH payments for the periods at issue and directing the Secretary to calculate the plaintiff hospitals' DSH payments by excluding

Part C days from the Medicare Part A/SSI fraction and including the Medicaid-eligible portion of those days in the numerator of the Medicaid fraction.

## JURISDICTION AND VENUE

6.      This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.

7.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(l).

8.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l).

## PARTIES

9.      Plaintiff Yale-New Haven Hospital is an acute care hospital located at 20 York Street, New Haven, CT 06510.

10.      Plaintiff Bridgeport Hospital is an acute care hospital located at 267 Grant Street, Bridgeport, CT 06610.

11.      The defendant is Alex M. Azar, in his official capacity as the Secretary of the United States Department of Health and Human Services ("Secretary"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

12.      The Centers for Medicare & Medicaid Services ("CMS") is the component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program. CMS was formerly known as the Health Care Financing Administration. References to CMS herein are meant to refer to the agency and its predecessors.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

13.      Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(l).  Since 1983, the Medicare program has paid most hospitals for the operating costs

of inpatient hospital services under the prospective payment system ("PPS"). 42 U.S.C.

§ 1395ww(d); 42 C.F.R. Part 412.  Under the PPS, Medicare pays predetermined, standardized

amounts per discharge, subject to certain payment adjustments.  *Id.*  One of the PPS payment

adjustments is the DSH payment.  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

14.     A hospital that serves a disproportionate share of low-income patients is entitled

to an upward percentage adjustment to the standard PPS rates per discharge.  *See* 42 U.S.C.

§ 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106. A hospital may qualify for a DSH adjustment

based on its "disproportionate patient percentage."  *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and

(d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1).  The disproportionate patient percentage determines both

a hospital's qualification for the DSH payment and the amount of the payment.  *See* 42 U.S.C. §§

1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d).

15.     The disproportionate patient percentage is defined as the sum of two fractions

expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).  The first fraction that is used to

compute the DSH payment is commonly known as the "Medicaid fraction." The statute defines

the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is
> the number of the hospital's patient days for such period which
> consist of patients who (for such days) were eligible for medical
> assistance under a State plan approved under [the Medicaid statute,
> title XIX of the Social Security Act], but who were *not entitled to
> benefits under part A* of [the Medicare statute, title XVIII of the
> Social Security Act], and the denominator of which is the total
> number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).  As reflected in the italicized language

above, the numerator of the Medicaid fraction consists of days for patients who were both

eligible for medical assistance under the Medicaid statute and "not entitled to benefits under part

A" of the Medicare statute.

16.     The other fraction that is used to compute the DSH payment is the "Medicare Part

A/SSI fraction" or "SSI fraction."  The statute defines this fraction as:

> the fraction (expressed as a percentage), the numerator of which is
> the number of such hospital's patient days for such period which
> were made up of patients who (for such days) were *entitled to*
> *benefits under part A* of [the Medicare statute] and were entitled to
> supplemental security income benefits (excluding any State
> supplementation) . . . , and the denominator of which is the number
> of such hospital's patient days for such fiscal year which were
> made up of patients who (for such days) were *entitled to benefits*
> *under part A* of [the Medicare statute]...

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  As the italicized language indicates, the

Medicare Part A/SSI fraction consists solely of days for patients who were "entitled to benefits

under part A" of Medicare.  The denominator includes all Medicare Part A days, whereas the

numerator includes only those Part A days for patients who are also entitled to social security

income ("SSI") benefits under title XVI of the Social Security Act.  The Medicare Part A/SSI

fraction is computed for each federal fiscal year by CMS, and must be used to compute a

hospital's DSH payment for the cost reporting period beginning in the federal fiscal year.  42

C.F.R. §§ 412.106(b)(2)-(3).

**Medicare Part C**

17.     Section 4001 of the Balanced Budget Act of 1997, Pub. Law No. 105-33, added a

new Part C to the Medicare statute to establish a Medicare program that was originally called the

Medicare+Choice program and is now called Medicare Advantage.  A Medicare beneficiary can

elect to receive Medicare benefits either through the original fee-for-service program under

Medicare Parts A and B, or through enrollment in a Medicare Advantage plan under Medicare

Part C.  42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50; *see also* 63 Fed. Reg. 34,968, 34,968

(June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and

enrolled under Part B ... may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan.") (emphasis added).

18.     Prior to the 2004 rulemaking, in which the agency attempted to adopt a new policy on the treatment of Part C days in the Medicare DSH payment calculation, "the Secretary treated Part C patients as *not* entitled to benefits under Part A." *Allina I*, 746 F.3d at 1106.  The pre-2004 regulation limited the Medicare Part A/SSI fraction to Medicare patient days that were covered, or paid, by Medicare Part A and included other Medicare patient days (not covered under Part A) in the numerator of the Medicaid fraction to the extent that those patients were also eligible for Medicaid.  *See* 42 C.F.R. § 412.106(b)(2)(i) (2003); *see also* 42 C.F.R. § 409.3 (defining "covered" as services for which payment is authorized).

19.     As the Secretary explained when he adopted it, the pre-2004 regulation mandated that only "covered Medicare Part A inpatient days" be included in the Part A/SSI fraction. 51 Fed. Reg. 16,772, 16,788 (May 6, 1986); *see also* 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986) (stating that limiting the Medicaid fraction to days where "the Medicaid program is the primary payor" was "consistent with" the Part A/SSI fraction being limited to "covered days"); *Catholic Health Initiatives-Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013) (noting that the pre-2004 regulation unambiguously limited the Part A/SSI fraction to "covered Medicare Part A inpatient days").  Further, written guidance issued prior to 2004 repeatedly expressed the Secretary's policy that Part C days were to be excluded from the Part A/SSI fraction. *See, e.g.*, *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 15 (D.C. Cir. 2011) (describing written guidance).

20.     In a 2003 proposed rule, the Secretary proposed "to clarify" his long-held position that "once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage."  68 Fed. Reg.

27,154, 27,208 (May 19, 2003).  The agency explained that "[t]hese days should be included in

the count of total patient days in the Medicaid fraction (the denominator), and the patient's days

for a [Part C] beneficiary who is also eligible for Medicaid would be included in the numerator

of the Medicaid fraction."  *Id*.  The Secretary explained that "once a beneficiary has elected to

join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under

Part A."  *Id.*

21.     In the preamble to a final rule adopted in 2004, however, the Secretary reversed

course and "abruptly announced a change in policy."  *Allina Health Servs. v. Sebelius*, 904 F.

Supp. 2d 75, 78 (D.D.C. 2012), *aff'd*, 746 F.3d at 1107-10.  That 2004 rule announced that the

Secretary would "adopt a policy" to include Part C days in the Medicare Part A/SSI fraction and

exclude them from the Medicaid fraction effective October 1, 2004.  69 Fed. Reg. 48,916, 49,099

(Aug. 11, 2004); *see also Northeast Hosp.*, 657 F.3d at 16 ("[I]n the 2004 rulemaking [the

Secretary] announced that she was 'adopting a policy' of counting [Part C] days in the Medicare

fraction").

22.     In the 2004 final rule, the Secretary amended the regulation text by deleting the

word "covered."  69 Fed. Reg. at 49,246.  When CMS initially transmitted the Part A/SSI

fractions for federal fiscal years 2005 and 2006, however, those fractions continued to exclude

Part C days. *See* CMS Pub. 100-04, Transmittal 1091 (Oct. 27, 2006), *reprinted in* MEDICARE &

MEDICAID GUIDE (CCH) ¶ 156,277 (transmitting federal fiscal year 2005 Part A/SSI fractions

and specifying that the fractions include only "covered Medicare days," and referring to the ratio

of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days

attributable to SSI recipients"); CMS Pub. 100-04, Transmittal 1396 (Dec. 14, 2007), *reprinted*

*in id*. ¶ 156,930 (same for federal fiscal year 2006 fractions).

23.     In July 2007, CMS issued a revision to a Medicare program manual, with a "purported 'effective date' of October 1, 2006," that permitted hospitals to submit the data necessary to implement the new policy regarding Part C days.  *Allina Health Servs.*, 904 F. Supp. 2d at 82.  Thereafter, in August 2007, the Secretary further amended the text of the DSH regulation governing Part C days without affording hospitals prior notice or opportunity for comment.  72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007).

24.     Following the amendments in 2004 and 2007, the regulation provided that the Part A/SSI fraction includes all patient days (not just "covered" days) for "patients entitled to Medicare Part A (*or Medicare Advantage (Part C)*)."  *Id.* at 47,411 (amending §§ 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added).  The amendment of the regulation was made effective October 1, 2007, the beginning of federal fiscal year 2008. *Id.* at 47,130; *see also Allina Health Servs.*, 904 F. Supp. 2d at 82.

25.     In 2010, the Secretary further amended the DSH regulation, changing the word "or" to "including." 75 Fed. Reg. 50,042, 50,285-86, 50,414 (Aug. 16, 2010).  The district court in *Allina I* noted that this further change was made "in an apparent attempt to bolster" the Secretary's litigation position.  *See* 904 F. Supp. 2d at 82 n.5.

**The *Allina I* Litigation**

26.     In July 2009, the Secretary first published Part A/SSI fractions for hospital cost reporting periods beginning in federal fiscal year 2007.  These fractions for the first time included Part C days.

27.     In *Allina I*, a group of hospitals challenged the applicability of the 2004 rule on the treatment of Part C days in the DSH payment calculation for cost reporting periods beginning in federal fiscal year 2007, contending, among other things, that the abrupt reversal in policy did

not meet notice and comment requirements and was not the product of reasoned decision making because the agency failed to acknowledge or explain its departure from past policy.

28.     This Court agreed and held that the policy announced in the 2004 final rule regarding Part C days was not the logical outgrowth of the 2003 proposed rule.  904 F. Supp. 2d at 89-92.  This Court also held that the "cursory explanation in the 2004 Final Rule failed to meet the requirements of the APA" because "the Secretary[] fail[ed] to acknowledge her 'about-face,'" and "her reasoning for the change was brief and unconvincing."  *Id.* at 93 (quoting *Northeast Hosp.*, 657 F.3d at 15).  Accordingly, this Court concluded that "[t]he portion of the 2004 Final Rule ... that announced the Secretary's interpretation of the Medicare Disproportionate Share Hospital Fraction, as codified in 2007 at 42 C.F.R. § 412.106(b)(2) and as further modified in 2010, will be vacated, and the case will be remanded to the Secretary for further action consistent with this Opinion."  *Id*. at 95.

29.     While the Secretary's appeal from this Court's decision in *Allina I* was pending before the Court of Appeals, the agency engaged in a new rulemaking on the treatment of Part C days effective only prospectively, beginning October 1, 2013.  In that rulemaking, the agency "proposed to readopt the policy of counting the days of patients enrolled in [Part C] plans in the Medicare fraction" "in an abundance of caution."  78 Fed. Reg. 50,496, 50,615 (Aug. 19, 2013).  Accordingly, effective as of October 1, 2013, the rule governing the DSH calculation is the same as the 2004 rule had been. *See id.* at 50,619 (rule "readopt[ion]" applies to "FY 2014 and subsequent years" only).

30.     On April 1, 2014, the D.C. Circuit affirmed this Court's *Allina I* decision on the merits, "agree[ing] with the district court that the Secretary's final rule was not a logical outgrowth of the proposed rule."  746 F.3d at 1109.  Because this procedural failure was a

sufficient basis to vacate the rule, the D.C. Circuit did not reach the arbitrariness of the Secretary's explanation. *Id.* at 1111.

31.     With respect to remedy, the D.C. Circuit held that this Court "correctly concluded that vacatur was warranted." *Id.* The Court of Appeals reversed, however, a Part of this Court's order that required "the Secretary to recalculate the hospitals' reimbursements 'without using the interpretation set forth in the 2004 Final Rule.'" *Id.* (quoting the Post-Judgment Order). The Court of Appeals instead remanded, noting that the "question whether the Secretary could reach the same result" on remand as would have applied under the vacated rule "was not before the district court" and therefore this Court should have simply "remand[ed] after identifying the error." *Id.* at 1111.

32.     The D.C. Circuit's mandate issued on May 28, 2014. The time for filing a petition for certiorari expired on June 30, 2014, and the Secretary declined to seek Supreme Court review. In early December 2015, the Secretary issued a remand decision in *Allina I* once again concluding that Part C days should be counted in the 2007 Medicare Part A/SSI fractions for the cost years at issue in that case. The plaintiffs in *Allina I* filed a complaint with this court challenging the remand decision, which is still pending. *Allina Health Sys. v. Burwell*, No. 16-cv-150 (D.D.C. filed Jan. 29, 2016) ("*Allina III*").

### The *Allina II* Litigation

33.     In mid-June 2014, the agency published Part A/SSI fractions for Federal fiscal year 2012, including Part C days for all hospitals in the country. The agency provided no explanation at all for its decision to include Part C days in the Part A/SSI fractions for fiscal year 2012 but instead issued those fractions just as it had for prior years, either applying the 2004 rule as if the vacatur of that rule in *Allina I* never happened, or issuing a new rule without notice-and-comment rulemaking.

34.     Certain plaintiff hospitals in the *Allina I* litigation filed a separate action in this court challenging the 2014 determination.  The Secretary moved to dismiss the action, asserting that his Board incorrectly granted expedited judicial review in that case, but this court rejected that motion.  This court then granted the Secretary's motion for summary judgment.  *Allina Health Servs. v. Burwell*, 201 F. Supp. 3d 94 (D.D.C. 2016), which the hospitals appealed to the Court of Appeals in *Allina II*.

35.     The Court of Appeals issued its decision in *Allina II*, agreeing with the hospitals that the Secretary "violated the Medicare Act by failing to provide for notice and comment" before readopting the 2004 policy.  *Allina II*, 863 F.3d at 942.  The Court of Appeals concluded that the Medicare Act, 42 U.S.C. § 1395hh(a)(2), required rulemaking for any "(1) 'rule, requirement, or other statement of policy' that (2) 'establishes or changes' (3) a 'substantive legal standard' that (4) governs 'payment for services," and that the Secretary's issuance of the fiscal year 2012 Part A/SSI fractions including Part C days satisfied each of these factors.  *Id.*  The Court also found that the Secretary violated another provision of the Medicare Act, 42 U.S.C. § 1395hh(a)(4), which provides that "if a regulation includes 'a provision that is not a logical outgrowth of a previously published notice of proposed rulemaking,' that provision may not become legally operative until it has gone through notice-and-comment rulemaking." *Id.* at 945.

36.     On November 29, 2017, the Court of Appeals denied the Secretary's petition for rehearing or rehearing *en banc* in *Allina II*.

### Review of Medicare Payment Determinations

3 7.     After the close of each fiscal year, a hospital is required to file a "cost report" with a Medicare Administrative Contractor designated by the Secretary.  42 C.F.R. §§ 413.20, 413.24.

38.     The Medicare Administrative Contractor analyzes a hospital's cost report and issues a final determination (known as a Notice of Program Reimbursement or NPR) as to the amount of Medicare program reimbursement due the hospital for services furnished to Medicare patients during the fiscal year covered by the cost report.  *See* 42 C.F.R. § 405.1803; *see also In re Medicare Reimbursement Litig.,* 309 F. Supp. 2d 89, 92 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005).

39.     A hospital may appeal a Medicare Administrative Contractor's final determination as to the total amount of Medicare program reimbursement due the hospital for the fiscal year covered by a cost report to the Secretary's Provider Reimbursement Review Board ("Board").  *See* 42 U.S.C. § 1395oo(a)(1)(A); 42 C.F.R. §§ 405.1835–405.1877.

40.     Congress recognized that a hospital's right to challenge a Medicare payment policy should not be delayed indefinitely because a Medicare contractor fails to issue an NPR timely.  Accordingly, pursuant to 42 U.S.C. §§ 1395oo(a)(1)(B) and (C), a hospital may also request a hearing from the Board when its Medicare contractor has failed to issue a final determination for its perfected cost report within 12 months of the date of receipt of a cost report by the Medicare contractor.

41.     The Medicare statute authorizes the Board to determine that it is without authority to decide the question of law or regulations relevant to a matter in controversy in an appeal before the Board and grant the right to expedited judicial review. 42 U.S.C. § 1395oo(f)(1). Pursuant to the Secretary's regulations, the Board is bound by agency rules and rulings, like the 2004 rule at issue.  42 C.F.R. § 405.1867.  If the Board determines that expedited judicial review is appropriate, then the hospital may commence a civil action in this Court within 60 days of the date on which the hospital receives notification of the Board's determination. *Id*.

## FACTS SPECIFIC TO THIS CASE

42.     The plaintiff hospitals filed a cost report or amended cost report with its designated Medicare contractor, and later timely filed appeals following the receipt of their final determinations from the Medicare contractors, pursuant to 42 U.S.C. § 1395oo(a)(1)(A) for fiscal years 2006 through 2013.

43.     The plaintiff hospitals appealed the treatment of Medicare Part C days in the Medicare DSH calculation to the Secretary's Board.  In their appeals, the hospitals challenged the agency's continuing policy of including Part C days in the Medicare Part A/SSI fractions and excluding those days from the numerator of the Medicaid fractions for the periods at issue.

44.     Each of those appeals was timely filed with the Secretary's Board.  The Board assigned those appeals case numbers 13-3817GC, 13-3959GC, 14-0476GC, 14-1438GC, 15-0683GC, 15-2525GC, 16-1977GC.  In a letter submitted on May 16, 2018, the plaintiff hospitals requested that the Board grant expedited judicial review with respect to the DSH Part C days issue pending in the above-referenced appeals.

45.     By letter dated May 24, 2018, the Board granted the hospitals' request for expedited judicial review, finding that the Secretary has not acquiesced in the decision in *Allina I*, that the Board was bound by the terms of the DSH regulation regarding the treatment of Part C days, as amended in the 2004 rule, 42 C.F.R. § 412.106(b)(2)(i)(B) and (b)(2)(iii)(B), and that the Board therefore was without authority to decide the validity of the DSH Part C policy adopted in the 2004 rule.  *See* Exhibit A.

46.     By the filing of this Complaint, the plaintiff hospitals have timely commenced this action for expedited judicial review under 42 U.S.C. § 1395oo(f)(1).

## ASSIGNMENT OF ERRORS

47.     The Medicare statute provides for judicial review of the question presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the APA. 42 U.S.C. § 1395oo(f)(l).

48.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]"  5 U.S.C. § 706(2).

49.     The Secretary's calculation of the plaintiff hospitals' DSH payments is procedurally invalid under the Medicare Act, 42 U.S.C. § 1395hh, and the APA, 5 U.S.C. § 553, including for the reasons described below.

50.     The Secretary's interpretation including Part C days in the Part A/SSI fraction and excluding those days from the numerator of the Medicaid fraction is procedurally invalid under the Medicare Act, 42 U.S.C. § 1395hh.  The Medicare Act requires notice and comment rulemaking for a "rule," a "requirement" or a "statement of policy" that "establishes or changes a substantive legal standard governing ... the payment for services."  42 U.S.C. § 1395hh(a)(2). *See Allina II*, 863 F.3d at 942 (finding that Secretary "violated" the rulemaking provisions of the Medicare Act under 42 U.S.C. § 1395hh(a)(2) by failing to provide for notice and comment).

51.     Further, the Medicare Act provides that if a final rule is not a logical outgrowth of a proposed rule, then it "shall not take effect" until there is further opportunity for comment and publication again as a final rule.  42 U.S.C. § 1395hh(a)(4); *Allina II*, 863 F.3d at 945 (the Secretary violated 42 U.S.C. § 1395hh(a)(4) by not providing a "further opportunity for public comment and a publication of the [2004] provision again in a final regulation" before reimposing

the 2004 rule vacated for a logical outgrowth failure) (internal quotation omitted). This Court has already ruled, and the Court of Appeals has affirmed this Court's ruling, that the 2004 rule was not a logical outgrowth of the proposed rule.

52.     The Secretary's interpretation including Part C days in the Part A/SSI fraction and excluding those days from the numerator of the Medicaid fraction is also invalid under the APA. Under established circuit precedent applying the APA, "[u]nless and until [an agency] amends or repeals a valid legislative rule or regulation, [the] agency is bound by such a rule or regulation," *Am. Fed'n of Gov't Emps. v. Fed. Lab. Rels. Auth.*, 777 F.2d 751, 759 (D.C. Cir. 1985). The pre-2004 regulation, which was restored by the Court's vacatur in *Allina I*, dictates the exclusion of Part C days from the number of Part-A-entitled days in the Medicare DSH calculation. That pre-2004 regulation specifies that the Part A/SSI fraction includes only "covered" patient days, *see* 42 C.F.R. §§ 412.106(b)(2)(i) (2003), meaning days paid under Part A. *Id.* § 409.3; *see also Catholic Health Initiatives Iowa Corp.*, 718 F.3d at 921 n.5. Part C day are not covered by Part A because payment by private Part C Medicare Advantage plans for services furnished to their Part C patients is *not* payment by Part A. *See* 42 U.S.C. § 1395w-21(a)(1); *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d at 6.

53.     The Secretary cannot effectively amend the pre-2004 reinstated legislative rule except through notice and comment rulemaking. What an agency does through notice and comment can only be undone by notice and comment. *See Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 241 (D.C. Cir. 1992) ("Once a regulation is adopted by notice-and-comment rulemaking . . . its text may be changed only in that fashion.") (quoting *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 413 (7th Cir. 1987)).

54.     In addition, the Secretary's interpretation including Part C days in the Part A/SSI

fraction and excluding those days from the Medicaid fraction is substantively invalid because the

agency did not "consider the matter in a detailed and reasoned fashion" in adopting the 2004 rule

(or otherwise) and the Part C days policy adopted in that rule is not "consistent with the

underlying statutory scheme in a substantive sense." *ITT Indus., Inc. v. NLRB*, 251 F.3d 995,

1004 (D.C. Cir. 2001). Further, the Secretary has not acknowledged that the policy adopted in

the 2004 rule departed from the pre-existing rule and practice regarding the treatment of Part C

days in the DSH payment and has not explained any good reason for that change. *See FCC v.

Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009).  Likewise, the Secretary has never

acknowledged the enormous adverse financial impact on hospitals of the 2004 policy change, nor

has the Secretary ever explained why the policy change is appropriate despite that adverse

impact on the nation's safety-net hospitals, like the plaintiff hospitals, that shoulder the financial

burden of treating a disproportionate share of low-income patients.

55.     The Secretary's interpretation treating Part C days as Part A days is also contrary

to the intent of Congress in enacting the DSH statute and fails the reasonableness test under

*Chevron* step two.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837

(1984).  The policy "conflict[s] with the policy judgments that undergird the statutory scheme."

*Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 416 (D.C. Cir. 1994), and is

impermissible, *see Goldstein v. SEC*, 451 F.3d 873, 883 (D.C. Cir. 2006) (rejecting policy under

*Chevron* step two where it was not "rational when viewed in light of the policy goals underlying

the" applicable statute).

**REQUEST FOR RELIEF**

52.     The plaintiff hospitals request an Order:

a.      declaring invalid and setting aside the Secretary's final determinations including Part C days in the Part A/SSI fraction and excluding Part C days from the numerator of the Medicaid fraction used to calculate the Medicare DSH calculations for the cost reporting periods at issue;

b.      declaring invalid and enjoining the Secretary from applying any policy of including Part C days in the Part A/SSI fraction and excluding Part C patient days from the numerator of the Medicaid fraction for purposes of calculating the plaintiff hospitals' Medicare DSH payments in any future payment determinations for periods on or after October 1, 2004;

c.      directing the Secretary to calculate the plaintiff hospitals' DSH payments consistent with that Order and to make prompt payment of any additional amounts due the plaintiff hospitals, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

d.      requiring the Secretary to pay legal fees and cost of suit incurred by the plaintiff hospitals; and

e.      providing such other relief as the Court may consider appropriate.

Dated:  July 23, 2018

Respectfully submitted,


/s/ Jeffrey L. Poston
Jeffrey L. Poston (D.C. Bar No. 426178)
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2775
(202) 628-5116 (Fax)
jposton@crowell.com

and


Rachel M. Wertheimer
*Pro hac vice motion to be filed*
VERRILL DANA LLP
One Portland Square
Portland, ME 04101
Tel:  (207) 774-4000
Fax:  (207) 774-7499
rwertheimer@verrilldana.com


Gary A. Rosenberg
*Pro hac vice motion to be filed*
VERRILL DANA LLP
One Boston Place, Suite 1600
Boston, MA 02108
Tel: (617) 309-2600
Fax: (617) 309-2601
grosenberg@verrilldana.com